961 F.2d 1580
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael S. SPILLAN, Defendant-Appellant.
 No. 91-3539.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1992.
 
 Before MILBURN and RYAN, Circuit Judges, and HOOD, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Defendant Michael S. Spillan appeals from his jury convictions for using a false Social Security number, in violation of 42 U.S.C. § 408(g)(2); uttering counterfeit securities, in violation of 18 U.S.C. §§ 2, 513(a); bank fraud, in violation of 18 U.S.C. § 1344; and obstruction of correspondence, in violation of 18 U.S.C. § 1702. He raises four issues on appeal:
 
 
 2
 1. Whether the search warrants for Spillan's residence, office, and automobile were supported by sufficient probable cause and whether the district court erred by failing to conduct a Franks hearing on Spillan's suppression motion;
 
 
 3
 2. Whether the assistance provided to Spillan by his trial counsel was so ineffective as to warrant a new trial;
 
 
 4
 3. Whether the newly discovered evidence presented by Spillan warrants a new trial; and
 
 
 5
 4. Whether the district court clearly erred by enhancing Spillan's sentence?
 
 
 6
 We conclude that the district court's judgment should be affirmed.
 
 I.
 
 7
 Defendant Spillan met Dennis Rezabek and Jack Frederick during Spillan's previous periods of incarceration in Ohio. Rezabek later introduced Spillan to Sean Shugarts. Rezabek, Frederick, and Shugarts were key participants in a network Spillan developed to create and pass counterfeit checks; offenses for which he was later convicted. Rezabek, Frederick, and Shugarts testified at the trial.
 
 
 8
 After Spillan was released from prison in September 1989, he obtained a driver's license bearing a false Social Security number.
 
 
 9
 Frederick testified that Spillan contacted him in September 1989, and that he participated with Spillan in schemes to pass counterfeit cashier's checks. Spillan would buy a low denomination cashier's check, then use it as a master to make counterfeit checks in much higher denominations, at times as high as $28,000. Frederick saw Spillan make counterfeit checks using a computer, printer, copier, and watermarked paper. On two occasions, Frederick used counterfeit cashier's checks produced by Spillan to purchase traveler's checks. In March 1990, Frederick purchased traveler's checks from the Ohio Auto Club, and in April 1990 from People's Travel.
 
 
 10
 Rezabek testified that he contacted Spillan in December 1989, and that he and Spillan opened a letter that contained an authentic check from the Mercury Insurance Group made out to a James McFarland. The two used this check as a master to make counterfeit checks.
 
 
 11
 Shugarts testified that he participated with Spillan in several schemes to pass counterfeit checks. In one scheme, Shugarts used counterfeit checks produced by Spillan to purchase cars from four private individuals, sell the cars to dealers, and divide the proceeds. In another scheme, Shugarts opened accounts at banks, deposited Spillan-produced checks, and withdrew funds. In yet another scheme, Shugarts used Spillan-produced checks to pay for Western Union wire transfers of money.
 
 
 12
 In March 1990, several law enforcement agencies in Ohio joined with the FBI to investigate the counterfeit check ring. On March 22, 1990, Detective Gene Hunter of the Waterville, Ohio Police Department applied to the Franklin County Municipal Court for a warrant to search the residence, office, and automobile of Spillan. In support of the application, Detective Hunter submitted a six-page affidavit linking Spillan to Shugarts. The state court issued the warrants. When the warrants were executed, agents discovered a check protector machine, false identification used by Spillan, and telephone messages to Spillan from a supplier of safety paper.
 
 
 13
 This action by law enforcement agents did not deter Spillan. In April 1990, he and another associate, Danny Porter, attempted to buy traveler's checks with a counterfeit cashier's check at a Columbus, Ohio, travel agency. Unbeknownst to Spillan and Porter, the travel agency had informed the Columbus Police Department that Porter had called ahead to order the checks, and, as a result, the Columbus police sent a detective to pose as a trainee and work in the front office. With Spillan waiting in the parking lot, Porter entered the agency and tendered the check. The detective contacted the drawee bank and discovered that the check was probably not legitimate. As this verification was taking place, Spillan and Porter attempted to flee, but were stopped by officers of the Columbus Police Department.
 
 
 14
 Spillan proved to be a particularly determined criminal, for even this encounter did not deter him from further counterfeiting activity. In June 1990, Spillan ordered a supply of business checks bearing the name of a company called National Rx Services, made them payable to an alias, William T. Hamil, and then forged the name of a company officer. Spillan then cashed these counterfeit paychecks at Columbus-area grocery stores.
 
 
 15
 In August 1990, federal agents arrested Spillan, and searched his wife's car. In the trunk, the agents found pieces of a counterfeit check. When fit together, the pieces formed a check like the counterfeit paychecks Spillan had recently passed at grocery stores. In addition, agents found a piece of opened mail, addressed to James McFarland, which contained a check made payable to McFarland from the Mercury Insurance Group.
 
 
 16
 In September 1990, a federal grand jury returned a 23-count indictment against Spillan. The indictment charged Spillan with:
 
 
 17
 --5 counts of using a false Social Security number, in violation of 42 U.S.C. § 408(g)(2).[1]
 
 
 18
 --16 counts of uttering counterfeit securities, in violation of 18 U.S.C. §§ 2, 513(a).
 
 
 19
 --1 count of bank fraud, in violation of 18 U.S.C. § 1344.
 
 
 20
 --1 count of obstruction of correspondence, in violation of 18 U.S.C. § 1702.
 
 
 21
 In October 1990, Spillan moved to suppress the evidence discovered in the March 22, 1990 searches of his residence and office. In November, the district court denied the motion.
 
 
 22
 Spillan's trial began on November 13, and on November 16 the jury convicted him on all 23 counts of the indictment. After several post-trial motions, one dated June 7, 1991, the district court entered its judgment, and sentenced Spillan to 71 months imprisonment. Spillan filed his notice of appeal from that judgment on the same day, June 7, 1991. The significance of these dates will become apparent later in this opinion.
 
 
 23
 Later in June, Spillan moved for a new trial, alleging the discovery of new evidence. The district court denied the motion on June 28, 1991, and Spillan did not file a notice of appeal.
 
 II.
 A.
 Probable Cause for Search
 
 24
 Spillan advances two arguments on the probable cause issue. He argues first, that the district court should have conducted an evidentiary hearing to determine the validity of the affidavit supporting the search warrant for his residence and business. He argues second, that the affidavit failed to demonstrate he was involved in counterfeit activity because it showed merely that he associated with suspected counterfeiters.
 
 
 25
 This court reviews a district court's decision on a motion to suppress evidence according to two standards: findings of fact will be upheld unless clearly erroneous, and conclusions of law will be reviewed de novo. United States v. Duncan, 918 F.2d 647, 650 (6th Cir.1990), cert. denied, 111 S.Ct. 2055 (1991). In reviewing an affidavit in support of an application for a search warrant, the standard of review
 
 
 26
 "is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.... Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place."
 
 
 27
 United States v. Davidson, 936 F.2d 856, 859 (6th Cir.1991) (quoting United States v. Loggins, 777 F.2d 336, 338 (6th Cir.1985)).
 
 
 28
 In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court established the requirements a defendant must satisfy to receive an evidentiary hearing on a motion to suppress:
 
 
 29
 There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.
 
 
 30
 Id. at 171.
 
 
 31
 In support of his first argument, Spillan argues that falsehoods in the affidavit necessitated a Franks hearing. He contends that the affidavit contained the following false statements:
 
 
 32
 --A car which Spillan was seen driving, an Audi, had been purchased by Shugarts with counterfeit checks.
 
 
 33
 --Spillan had used false Social Security numbers to open bank accounts in Franklin county.
 
 
 34
 --Spillan had recently purchased a new car.
 
 
 35
 Before the district court, however, Spillan did not contend that the affidavit contained these falsehoods. Instead, he argued that the affidavit and its attachments failed to establish probable cause because they only "outline the defendant's criminal record and an allegation that certain unsavory people associated with him. However, no actual criminal activity involving checks or documents is tried to him by the attachments."
 
 
 36
 This bare allegation to the district court fails to satisfy the requirements established by Franks. Spillan did not produce any proof to support his present contentions regarding the affidavit. Nothing in the record justifies a Franks hearing.
 
 
 37
 Further, even if this court were to accept as true Spillan's unsupported assertions regarding the falsity of the statements, we would still have to inquire whether the remainder of the affidavit demonstrates sufficient probable cause. The Court in Franks noted that "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Id. at 171-72. As discussed below, the undisputed portions of the affidavit sufficiently establish probable cause, thus obviating the need for a hearing.
 
 
 38
 Spillan argues second, that the affidavit does not support a finding of probable cause. This court will not reverse a magistrate's probable cause determination if there is a fair probability that evidence will be found. In this case, the affidavit demonstrated a fair probability, even after excluding those portions which Spillan now asserts are false. The affidavit noted that Spillan:
 
 
 39
 --had a criminal history of counterfeiting checks.
 
 
 40
 --was a close associate of Shugarts who had recently been arrested for passing a forged cashier's check. Spillan shared an office with Shugarts, listed the same employer as Shugarts, drove a car owned by Shugarts, and spent time at Shugarts' residence.
 
 
 41
 --associated with Rezabek, who had a criminal history for counterfeiting checks and was known to use false identification.
 
 
 42
 --used an office that was under surveillance by the Columbus police because they suspected that men using the office had been purchasing cars with forged cashier's checks.
 
 
 43
 We think the Franklin County court that issued the warrant had a substantial basis for finding that the affidavit established probable cause to believe that evidence would be found in Spillan's residence, office, and automobile.
 
 B.
 Ineffective Assistance of Trial Counsel
 
 44
 Spillan argues that his trial counsel failed to make essential pretrial motions, failed to subpoena key alibi witnesses, turned over to the government the results of the defense expert's report, and failed to object to highly prejudicial and inadmissible testimony.
 
 
 45
 The court reviews a trial court's refusal to overturn a conviction on ineffective assistance of counsel grounds under the de novo standard. "[T]he performance and prejudice components of the Strickland test are mixed questions of law and fact freely reviewable by the appellate court." Blackburn v. Foltz, 828 F.2d 1177, 1181 (6th Cir.1987), cert. denied, 485 U.S. 970 (1988).
 
 
 46
 To establish that his counsel's assistance was so defective as to require reversal of his convictions, Spillan must show 1) that his counsel failed to provide reasonably effective assistance, and 2) that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). As to the first prong, the Supreme Court held that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." Id. at 689. As to the second prong, the court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 
 
 47
 Spillan contends that his trial counsel made several mistakes. We think, however, that none fall below the standard of reasonably effective assistance of counsel.
 
 
 48
 Spillan first contends that trial counsel's failure to request an evidentiary hearing on his motion to suppress constitutes ineffective assistance of counsel. Trial counsel moved to suppress the evidence from the March 1990 searches, and the district court denied the motion. The failure to seek an evidentiary hearing does not constitute ineffective assistance because the statements that are allegedly false, and would thereby justify a hearing, were not the essential elements of the affidavit.
 
 
 49
 Spillan contends second, that trial counsel's failure to make pretrial motions relating to discovery, such as filing requests for lists of prosecution witnesses, constituted ineffective assistance. Spillan does not explain how the failure to make the motions constituted ineffective assistance or how it prejudiced his defense. Further, Spillan fails to cite any authority for his argument that the failure to make the motions constitutes ineffective assistance. The district court in this case held that several of the motions "would not have been well taken." Trial counsel's actions relating to discovery did not constitute ineffective assistance.
 
 
 50
 Spillan argues third, that his trial counsel failed to subpoena and therefore did not elicit testimony from two alibi witnesses, Donald Clark and Kent Angelo. The record reveals that the district court did order the United States Marshal to serve subpoenas on these two men. The record also reveals that Clark was unavailable to testify because he was in the hospital. As to Angelo, there may have been strategic reasons that trial counsel chose not to call him as a witness; boxes of checks addressed to Spillan were delivered to Angelo's residence during the trial. Trial counsel's failure to call these witnesses did not constitute ineffective assistance of counsel.
 
 
 51
 Spillan argues fourth, that trial counsel's decision to turn over to the government the results of the defense expert's handwriting evaluation constituted ineffective assistance. The district court appointed Ray Fraley as the defense handwriting expert. At some point, trial counsel may have intended to call Fraley as a witness, even though his report indicated that Spillan had probably signed many of the forged checks. Although trial counsel ultimately chose not to call Fraley as an expert and the government did call him, trial counsel used some of Fraley's testimony to attack the conclusions of the prosecution's handwriting expert. Because Fraley was a possible trial witness, when trial counsel gave his report to the government, he was complying with Fed.R.Crim.P. 16(b)(1)(B), which requires a defendant to permit the government to copy any reports of physical examinations made in connection with the case.
 
 
 52
 Spillan argues fifth, that trial counsel failed to object to highly prejudicial and inadmissible testimony. In reality, none of the assertedly objectionable testimony was of sufficient importance such that the failure to object constitutes ineffective assistance.[2] The instances cited by Spillan are not meaningful, and the lack of an objection does not suggest ineffectiveness.
 
 
 53
 Spillan concludes his argument on this issue by asserting that the government's evidence was not overwhelming, and that the deficiencies of trial counsel thus prejudiced Spillan. This argument ignores the trial record, which includes many exhibits and voluminous testimony demonstrating that Spillan produced the counterfeit cashier's checks and forged his name on them. Thus, even if the trial counsel's performance at certain points in the trial was arguably deficient, the record does not demonstrate that more effective assistance would probably have resulted in a different outcome.
 
 C.
 
 54
 New Trial Based on Newly Discovered Evidence
 
 
 55
 Spillan argues that newly discovered evidence, consisting of two affidavits and one unsworn letter, prove that the other participants in the counterfeit check ring set him up, and that this warrants a new trial.
 
 
 56
 A threshold inquiry is whether this court has jurisdiction to consider Spillan's appeal of the denial of his motion for a new trial. Upon close examination of the record, we conclude that this court lacks jurisdiction to consider this issue because Spillan failed to file a notice of appeal of the district court's order denying his second motion for a new trial.
 
 
 57
 Spillan actually filed two motions for a new trial in the district court. The first accompanied a motion for acquittal that was filed on November 28, 1990. The sole ground for this first motion was that Spillan's trial counsel provided ineffective assistance. The district court denied this motion by an order filed May 9, 1991.
 
 
 58
 The district court imposed sentence on June 7, 1991, and Spillan filed his notice of appeal on the same day. The notice of appeal specifically stated that Spillan was appealing from the judgment of the district court entered on June 7, 1991.
 
 
 59
 Spillan filed his second motion for a new trial on June 10, 1991. The basis of the second motion is the one urged in this appeal: That newly discovered evidence warrants a new trial. The district court denied the second motion by order of June 28, 1991.
 
 
 60
 Federal Rule of Criminal Procedure 33 states in pertinent part: "A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case." The law of this circuit is very clear on motions for a new trial based on newly discovered evidence.
 
 
 61
 Under Rule 33, although the district court may not grant a new trial while an appeal is pending without a remand, the trial court may deny such a motion. Such a denial is an appealable order, and an immediate appeal taken from the denial will be consolidated with a pending appeal taken from the judgment of conviction.
 
 
 62
 United States v. Hatfield, 815 F.2d 1068, 1073 (6th Cir.1987) (citation omitted). Although consolidation is permitted, the defendant must still comply with the applicable procedural requirements:
 
 
 63
 [B]y being a distinct appealable order from which a separate appeal must be taken, an appeal from a Rule 33 motion denial is subject to the requirement that the appeal be taken within ten days from the docketing of the district court's order. Absent an appeal within this time, or an extension from the district court for filing the notice of appeal, this court, being without authority to extend the time for filing a notice of appeal, will lack the jurisdiction to hear the appeal.
 
 
 64
 Id. (citations omitted). In Hatfield, the court decided that it lacked jurisdiction because the defendant filed his notice of appeal one day late. Id. at 1074.
 
 
 65
 In this case, Spillan did not file a notice of appeal from the June 28, 1991 order denying his motion for a new trial. Lacking a timely notice of appeal, this court does not have jurisdiction to consider Spillan's appeal of the June 28 order. Fed.R.App.P. 4(b).[3]
 
 D.
 Sentencing
 
 66
 Spillan presents three main objections to his sentence. We shall discuss each in turn.
 
 
 67
 Appellate review of sentences under the Guidelines is governed by the due deference standard, and the appropriate standard of review varies depending on whether an issue is factual, legal, or mixed. United States v. Carroll, 893 F.2d 1502, 1505-06 (6th Cir.1990). If the issue involves a finding of fact, the standard of review is clearly erroneous. 18 U.S.C. § 3742(e) (Supp.1989). If the issue involves the proper legal construction of the Guidelines, then this court's review is de novo.
 
 
 68
 The district court arrived at Spillan's sentence as follows. It initially determined the offense level:
 
 
 69
 --6 level base offense level for offense involving fraud and deceit, U.S.S.G. § 2F1.1(a).
 
 
 70
 --7 level enhancement for specific offense characteristic relating to amount of loss, U.S.S.G. § 2F1.1(b)(1)(H).
 
 
 71
 --2 level enhancement for specific offense characteristic relating to an offense involving more than minimal planning and more than one victim, U.S.S.G. § 2F1.1(b)(2).
 
 
 72
 --4 level enhancement for defendant's role as organizer of criminal activity involving five or more participants, U.S.S.G. § 3B1.1(a).
 
 
 73
 --2 level enhancement for obstruction of justice, U.S.S.G. § 3C1.1.
 
 
 74
 This resulted in an offense level of 21. The district court determined that Spillan's criminal history category was IV. The sentencing table directed the trial court to sentence Spillan in the range of 57-71 months imprisonment. The court sentenced Spillan to 71 months imprisonment on 17 of the counts and 60 months imprisonment on six remaining counts, all terms to be served concurrently.
 
 1.
 Loss Determination
 
 75
 Spillan argues that the district court erred by determining that his criminal activities resulted in a loss of $164,472, an amount corresponding with an increase of seven levels. U.S.S.G. § 2F1.1(b)(1)(H). Spillan contends that the proper loss figure was only $107,272.
 
 
 76
 The district court added $57,200 to the amount conceded by Spillan because the district court included losses that resulted from the passing of two checks by co-conspirators Shugarts and Rezabek. The court found that Spillan provided the equipment and supplies to make the two checks, and that there was an agreement to split the proceeds.
 
 
 77
 Spillan specifically contends that only one check was involved. Accepting this contention as true, the loss would then be $135,872. This amount converts into the same offense level as the higher loss figure of $164,472. The district court did not err in finding that the loss justified an increase of seven levels.
 
 2.
 Enhancement for Being an Organizer
 The relevant guideline reads:
 
 78
 Based on the defendant's role in the offense, increase the offense level as follows:
 
 
 79
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 
 
 80
 U.S.S.G. § 3B1.1.
 
 
 81
 Spillan presents two arguments on this issue. He claims first that the conduct which resulted in the four-level organizer enhancement is the same conduct that led to the two-level enhancement for an offense involving more than minimal planning. He contends that such double-counting offends the Double Jeopardy Clause.
 
 
 82
 This argument has been rejected by courts in other circuits. In United States v. Boula, 932 F.2d 651, 655 (7th Cir.1991), the court rejected the same argument urged by Spillan, noting that
 
 
 83
 the defendants participated in elaborate planning, justifying the section 2F1.1(b)(2) enhancement, and leadership of an extensive criminal enterprise, justifying the section 3B1.1(a) enhancement. These Guidelines sections are not mutually exclusive and therefore no double counting occurred from these sentencing determinations.
 
 
 84
 See also United States v. Curtis, 934 F.2d 553, 556 (4th Cir.1991). We agree with the Seventh and Fourth Circuits. It is possible for a defendant to organize five or more people with only minimal planning, and it is possible that a crime involving more than minimal planning could be conducted by a single defendant. Spillan's double-counting argument fails.
 
 
 85
 Spillan argues second, that insufficient proof demonstrated that five or more people were involved in the specific transactions for which he was convicted. Prior to a recent change in the Guidelines, this view of § 3B1.1 found support in three circuits.[4] Nevertheless, a recent amendment to the introductory commentary to the Guidelines chapter on adjustments for a defendant's role in the offense provides: "The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct) ... and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. Ch. 3, Pt. B, intro comment. (amendment effective November 1, 1990). This amendment has impacted adjustment jurisprudence, as recently noted by the court in United States v. Caballero, 936 F.2d 1292 (D.C.Cir.1991), cert. denied, 112 S.Ct. 943 (1992):
 
 
 86
 Like the several courts that have addressed this issue since the clarifying amendment, we conclude that section 3B1 allows the sentencing judge to look to " 'the contours of the underlying scheme itself' rather than the mere elements of 'the offense charged.' "
 
 
 87
 Id. at 1298 (quoting United States v. Rodriguez, 925 F.2d 107, 111 (5th Cir.1991)). In this decision, the D.C. Circuit noted that the amendment nullified its decision in United States v. Williams, 891 F.2d 921 (D.C.Cir.1989), a decision which had adopted the argument urged by Spillan. Applying the amendment and recent decisions to this case, we conclude that the district court could properly count as participants those persons who assisted Spillan in his counterfeiting activities, including those involved with activities for which Spillan was not specifically indicted.
 
 
 88
 Spillan does not dispute that four persons were involved in his criminal activity: himself, Frederick, Rezabek, and Shugarts. He does dispute the participation of two unindicted persons, Forrest Porter and Danny Porter.
 
 
 89
 This court's review of the record indicates that sufficient evidence connects the Porters to Spillan's schemes. Shugarts testified that Danny Porter was involved in Spillan's "various scams" and that Forrest Porter was involved with purchasing a car with a counterfeit cashier's check. In fact, the record indicates that Danny Porter was involved in a specific transaction for which Spillan was convicted, thus allowing the district court to consider him even under the narrow analysis of § 3B1.1 adopted by some courts before the 1990 amendment. Included in the charges for which Spillan was convicted was Count 13, charging Spillan with making a counterfeit check with the intent of deceiving Uniglobe Travel Horizons. Danny Porter was involved in this specific transaction because he tried to pass this check to the travel agency and he was with Spillan when police stopped them after this aborted attempt.
 
 
 90
 Based on the evidence relating to Forrest Porter and particularly to Danny Porter, the district court's finding that at least five people were involved with Spillan's schemes is not clearly erroneous.
 
 3.
 Obstruction of Justice
 
 91
 Spillan's last objection to his sentence relates to the two-level enhancement for obstruction of justice based on the district court's conclusion that Spillan perjured himself at trial.[5] The district court was emphatic in finding that Spillan lied on the stand: "His testimony denying his role in these offenses was the most blatant example of untruthful testimony that I can recall in my almost five years now as a trial judge." Based on the voluminous record indicating that Spillan was deeply involved in the counterfeit ring, this finding is not clearly erroneous.
 
 
 92
 Spillan contends that enhancing a sentence based on a finding that the defendant testified falsely is unconstitutional. This court rejected this argument in United States v. Acosta-Cazares, 878 F.2d 945, 953 (6th Cir.), cert. denied, 493 U.S. 899 (1989):
 
 
 93
 [T]here is no constitutional right to testify untruthfully at trial. A defendant denies his guilt by pleading "not guilty" while not under oath. There is, however, no constitutional right to commit perjury either as a defendant testifying in his or her own behalf or as a witness testifying before a grand jury.... We likewise hold that in applying the guidelines, there is no constitutional protection against increased sentencing where it is believed that the defendant attempted to obstruct justice by lying during his testimony.
 
 
 94
 We conclude that the enhancement for obstruction of justice is not clearly erroneous or contrary to law.
 
 III.
 
 95
 The district court's judgment is AFFIRMED in all respects.
 
 
 
 *
 The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 In November 1990, 42 U.S.C. § 408(g)(2) was redesignated as 42 U.S.C. § 408(a)(7)(b)
 
 
 [2]
 One instance cited by Spillan, the failure to object to testimony that the witness was "pretty sure" that the grocery store purchased its stock from out of state, is groundless. Grocery stores obviously receive some stock from out of state, and objecting to this statement would have been futile
 
 
 [3]
 Even if we had addressed Spillan's argument on this issue, we would have found it meritless. Spillan offers three pieces of new evidence: an affidavit from Debbie Gunnell, an affidavit from Loren Lewis, and an unsworn, handwritten letter from Darlene Frederick, wife of Jack Frederick, a participant in Spillan's many schemes. We agree with the district court's conclusion that the new evidence offered by Spillan "would not likely produce an acquittal at trial, since it does not negate the testimony concerning defendant's role in these offenses."
 In addition, each piece of new evidence is not reliable. As to the affidavits, the district court found that Spillan "has sufficient powers of persuasion to convince other persons to execute favorable affidavits." Spillan met Loren Lewis, the affiant of one affidavit, while they were confined in the Franklin County jail, after which Lewis attested to the affidavit. As to the letter from Darlene Frederick, the letter itself is inadmissible hearsay, and it relates numerous other hearsay statements. In addition, the letter demonstrates Darlene Frederick's unwillingness to testify: "I'm going to make a list of things that might help you and put it in with this letter but you gotta promise not to tell anybody where you got them. I can't testify for you and I can't let Jack know I helped...." (Emphasis in original.)
 
 
 [4]
 As the Fifth Circuit held, "a section 3B1.1(a) adjustment is anchored to the transaction leading to the conviction.... The sentencing court is thus not at liberty to include those members of [defendant's] organization not involved in the transaction of conviction for purposes of a section 3B1.1(a) departure." United States v. Barbontin, 907 F.2d 1494, 1498 (5th Cir.1990) (citing cases from the D.C. and Second Circuits)
 
 
 [5]
 On page 33 of his Brief, Spillan advances a separate argument. He contends that the district court erred when it concluded that he continued his criminal enterprise while in confinement awaiting trial. This argument is irrelevant because the district court did not rely on this conclusion when it sentenced Spillan