**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard Lee HATFIELD,**
**Defendant-Appellant.**

**Nos. 86–5347, 86–5629.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 30, 1987.

Decided April 3, 1987.

James J. Prichard, Jr., argued (court-appointed), Catlettsburg, Ky., for defendant-appellant.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Charle Dause, argued, for plaintiff-appellee.

Before KRUPANSKY, Circuit Judge, CELEBREZZE, Senior Circuit Judge, and WEBER, District Judge.*

CELEBREZZE, Senior Circuit Judge.

Defendant-appellant Richard Lee Hatfield appeals his conviction of being a felon in possession of a firearm, in violation of 18 U.S.C. app. § 1202(a)(1) (1982), and the district court's denial of his Rule 33 motion for a new trial based on newly discovered evidence. Hatfield contends on appeal that the district court erred in not suppressing the physical evidence admitted against him at trial as the product of an illegal search and seizure, that evidence indicative of his burglary activity was erroneously admitted in violation of Federal Rules of Evidence 403 and 404(b), and that the district court should have granted him a new trial due to noncompliance with a Kentucky custody-of-evidence statute. We conclude that the search of Hatfield's van and seizure of the physical evidence was constitutional, that admission of the burglary evidence was not error, and that the appeal from the denial of Hatfield's Rule 33 motion was untimely. Accordingly, we affirm the judgment of conviction against Hatfield and dismiss his companion appeal for want of jurisdiction.

Viewing the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the following transpired. Hatfield was driving alone in a van near Catlettsburg, Kentucky at approximately 1:15 a.m. on July 14, 1985 when Deputy Sheriff Elbert Bowe and Officer Steve McIntyre observed the van weaving from one lane to another. Stopping Hatfield to ascertain if he was driving while intoxicated, Bowe and McIntyre approached the van on foot from the

---

* Honorable Herman Jacob Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

rear, with Bowe to the left of the vehicle and McIntyre on the passenger's side. After Hatfield emerged from the van at Bowe's request, Sheriff Bowe determined that Hatfield was not intoxicated. Officer McIntyre informed Sheriff Bowe, however, that he had observed a large operational police scanner in the rear of the van through the window on the passenger side of the vehicle, and Sheriff Bowe told Hatfield to stand with Officer McIntyre away from the van, against the wall of a diner. Looking through the now-open door of the vehicle, Sheriff Bowe observed another, smaller police scanner between the seats of the van. He then entered the vehicle and seized this scanner, which he found to be operational, and a small "wallet" located under the scanner, which was found to contain lock picks. Believing that he had probable cause to search the rest of the van, Sheriff Bowe radioed Officer Payne to the scene to assist him in conducting a full-blown search. This search disclosed several .38–caliber bullets in a glove in an open console area under the dash, a loaded .38–caliber derringer wrapped in another glove in a map pocket behind the passenger seat, several steel bands of the type used to jimmy car door locks located under loose carpet in the rear of the van, an owner's manual for the police scanners, a catalog listing police radio frequencies, and a notebook containing local police frequencies. Following the search, Hatfield was placed in a patrol car, informed that he was under arrest for possession of police scanners, burglary tools, and a concealed weapon, and read his *Miranda* rights.

Hatfield was subsequently indicted by a federal grand jury for being a felon in possession of a firearm in violation of 18 U.S.C. app. § 1202(a)(1)(1982). Prior to trial, he moved to suppress all of the evidence seized from the van as the product of an illegal search and seizure. The district court denied this motion upon finding two bases for Sheriff Bowe's search, namely as a search incident to arrest and as an automobile search based on probable cause supplied by the plain view observation of the illegal police scanners. Hatfield also filed a motion *in limine* to restrain the admis-

sion of the police scanners and burglary tools at his trial for firearm possession, but this motion too was denied by the court. Thus, all of the burglary paraphernalia was admitted as evidence against Hatfield. After a jury found Hatfield guilty, he was sentenced to two years imprisonment, and an appeal ensued (No. 86–5347). Hatfield then filed a motion for a new trial based on newly discovered evidence, alleging error in the district court's admission of the physical evidence at trial without first ascertaining compliance with a Kentucky statute requiring a court order for release of evidence from the state evidence custodian. Following the denial of this motion, another appeal ensued (No. 86–5629). The two appeals were subsequently consolidated.

Hatfield's first contention on appeal is that the district court erred in not suppressing the incriminating physical evidence taken from the van by the police officers at the scene of his arrest. According to Hatfield, the search was not justified as a search incident to arrest because he was not placed under arrest until after the search, and was not justified as a warrantless search under the automobile exception because probable cause to conduct the search was lacking. In our view, a combination of the doctrines of search incident to arrest and probable cause for automobile searches provides a sufficient basis for concluding that the search of Hatfield's van and seizure of the physical evidence was constitutional. We find that a valid arrest occurred which gave the officers the right to search at least the front passenger area of the van, and that this search supplied probable cause warranting a search of Hatfield's entire vehicle. Thus, our analysis hinges on determining that an arrest occurred, that the arrest was lawful, and that the scope of the vehicle search was justified.

■ There is no bright-line test for determining when an investigatory stop crosses the line and becomes an arrest. *United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir.1986). Nevertheless, a police show of force and authority such that a

"reasonable person would have believed he was not free to leave," *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.), amounts to an arrest. *See United States v. Morgan*, 743 F.2d 1158, 1164 (6th Cir.1984), *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). Further, "the determination of whether an arrest has occurred is not dependent on whether the citizen is formally placed under arrest," *Hardnett*, 804 F.2d at 356; any "clear deprivation of liberty caused by law enforcement officials without formal words is nonetheless an arrest." *United States v. Canales*, 572 F.2d 1182, 1187 (6th Cir.1978); *see also United States v. Jackson*, 533 F.2d 314, 316 (6th Cir.1976).

■ In the instant case, Sheriff Bowe testified at the suppression hearing that Hatfield was in custody prior to the search which uncovered the firearm. Hatfield testified at the hearing that when Sheriff Bowe got in the driver's side of the van to retrieve the portable scanner, the sheriff commented, "It's against the law to have a scanner in the van." Hatfield further testified that he had been "ordered" by Sheriff Bowe to stand next to the wall of the diner, accompanied by instructions from the sheriff to the other officer to "watch him," and that while standing with the officer, "I wasn't about to move anyway." We find that Hatfield was under arrest before the search when he was standing with Officer McIntyre beside the wall of the diner away from the van, at which time Hatfield had been informed that it was illegal to have the scanners in his vehicle, and had witnessed Sheriff Bowe radio Officer Payne, who then arrived on the scene to aid Sheriff Bowe in the search. Under these circumstances, there had been a clear deprivation of Hatfield's liberty by law enforcement officials such that a reasonable person would not have felt free to leave.

■ Since having an operable police scanner in a vehicle was a crime in Kentucky, the police clearly had probable cause to arrest Hatfield following their plain view observation of the scanners in his van. *See United States v. Watson*, 423 U.S. 411, 418, 96 S.Ct. 820, 825, 46 L.Ed.2d 598 (1976). Therefore, the arrest was valid and justified some searching of the van as a search incident to a lawful custodial arrest. *New York v. Belton*, 453 U.S. 454, 457–60, 101 S.Ct. 2860, 2862–64, 69 L.Ed.2d 768 (1981).

■ A search incident to arrest encompasses the search of anything in the area which is, or was, within the "immediate control" of the defendant. *See id.* at 460, 101 S.Ct. at 2864; *Davis v. Robbs*, 794 F.2d 1129, 1131 (6th Cir.), *cert. denied*, 107 S.Ct. 592, 93 L.Ed.2d 593 (1986). It is unnecessary for the purposes of this appeal, however, for us to delineate the area which is within the immediate control of the driver of a van such as Hatfield's, or to hold that the entire interior of the van was searchable incident to Hatfield's arrest. The front passenger area of the van was clearly within Hatfield's immediate control, *cf. Belton*, 453 U.S. at 460, 101 S.Ct. at 2864, and the search of this area alone uncovered a wallet containing lock picks[1] and .38–caliber bullets.[2] This evidence, together with the existence of operable police scanners in the

---

1. The "wallet" containing the lock picks was seized contemporaneously with Sheriff Bowe's taking of the portable police scanner, rendering problematic whether the wallet was actually seized as part of the search incident to arrest. Nevertheless, this item, which was merely laying in the area between the van's seats, would have inevitably been discovered as part of the valid search of Hatfield's vehicle. Consequently, suppression of this item was not required, *see Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984), and the wallet can be viewed for our purposes as if it had not been discovered until the officers reentered the van to conduct their comprehensive search.

2. Officer Bowe testified at the suppression hearing that in his opinion the firearm, located in a map pocket behind the passenger seat, was accessible to a driver of the van. We would feel justified, therefore, in including this item among those in the area unquestionably searchable by being within the "immediate control" of Hatfield. As our resolution of this issue indicates, however, it is unnecessary for us to make this finding. Even without the gun, the officers' search of the most immediate area surrounding the driver of the van produced sufficient evidence to establish probable cause to search the rest of the vehicle.

vehicle, the time of night, and the location of the van in an area with a high incidence of burglary, supplied sufficient probable cause for believing that the van contained evidence of burglary. This probable cause justified the search of the entire vehicle which produced the firearm and additional burglary paraphernalia. *See Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (per curiam); *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975) (per curiam); *Chambers v. Maroney,* 399 U.S. 42, 51–52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). Accordingly, we hold that the entire search and seizure was constitutional, and that the district court did not err in declining to suppress any of the evidence taken from Hatfield's van.

Hatfield's second contention on appeal is that the burglary paraphernalia seized during the search was improperly admitted against him in violation of Fed.R.Evid. 403 and 404(b). Hatfield argues that since the crime of being a felon in possession of a firearm is not a specific intent crime, the evidence of burglary tools and police scanners was not admitted for a proper purpose under Rule 404(b),[3] but in contravention of the rule's prohibition against admitting evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show that he acted in conformity therewith." In addition, Hatfield contends that the burglary paraphernalia was not probative in proving his possession of the firearm and, therefore, the prejudice to him outweighed the probative value of the evidence, mandating exclusion of the evidence under Rule 403. We disagree.

 Before admitting evidence of other crimes, wrongs, or acts, "the district court must determine that the evidence is admissible for a proper purpose and that the probative value of the evidence outweighs its potential prejudicial effects." *United States v. Ismail,* 756 F.2d 1253, 1259 (6th Cir.1985); *see also United States v. Dabish,* 708 F.2d 240, 242 (6th Cir.1983)

(per curiam). In the instant case, although the crime with which Hatfield was charged is not a specific intent crime, a conviction under section 1202(a)(1) does require proof that the defendant *knowingly* possessed the gun. *See United States v. Laymon,* 621 F.2d 1051, 1054 (10th Cir.1980); *United States v. Goodie,* 524 F.2d 515, 518 (5th Cir.1975), *cert. denied,* 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976); *United States v. Thomas,* 484 F.2d 909, 914–15 (6th Cir.1973), *cert. denied,* 415 U.S. 924, 94 S.Ct. 1428, 39 L.Ed.2d 480 (1974). Even so, the burglary evidence was not properly admitted to prove Hatfield's knowledge unless he had put that mental state in issue or the *mens rea* associated with section 1202(a)(1) was not inferable from proof of possession itself. *See United States v. Schaffner,* 771 F.2d 149, 153 (6th Cir.1985); *United States v. Johnson,* 697 F.2d 735, 738–39 (6th Cir.1983); *United States v. Ring,* 513 F.2d 1001, 1007–09 (6th Cir.1975). Hatfield, however, denied knowledge of the presence of the gun in the van in response to the government's demand for notice of alibi, thereby placing this *mens rea* in issue in the case. In addition, whether Hatfield knowingly possessed the gun was not inferable from the mere presence of the firearm in the van. Consequently, we conclude that the burglary evidence was admissible for a proper purpose under Rule 404(b).

In addition, we find that the burglary evidence was probative of Hatfield's knowing possession of the gun. Evidence of a defendant's possession of cocaine, jewelry, cash, and merchandise lacking identification was held admissible in *United States v. Taylor,* 728 F.2d 864 (7th Cir.1984), to establish the defendant's motive for illegally possessing an unregistered firearm. *Id.* at 870–72. Conversely, weapons have been introduced in drug offense cases to establish the intent to distribute drugs, *e.g., United States v. Payne,* 805 F.2d 1062, 1065–66 (D.C.Cir.1986) (per curiam); *United States v. Arnott,* 704 F.2d 322, 325–26 (6th Cir.), *cert. denied,* 464 U.S. 948, 104 S.Ct. 364, 78 L.Ed.2d 325 (1983), on the theory that guns are "tools of the trade" in traf-

---

**3.** Fed.R.Evid. 404(b) permits the introduction of evidence of other crimes, wrongs, or acts to establish "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

ficking narcotics, *United States v. Marino,* 658 F.2d 1120, 1123 (6th Cir.1981). In the instant case, the possession of burglary tools and police scanners in the van was similarly probative of Hatfield's knowledge of the presence of the gun, which could be considered a tool of the burglary trade and useful in protecting ill-gotten booty.

Finally, although the burglary evidence was likely prejudicial to Hatfield, as Rule 404(b) evidence usually is, Hatfield has failed to demonstrate that the probative value of the burglary evidence was *substantially* outweighed by the prejudicial effect, as is required by Rule 403. *See United States v. Metzger,* 778 F.2d 1195, 1206 (6th Cir.1985) (broad discretion in trial court's balancing of Rule 403 interests), *cert. denied,* —— U.S. ——, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986); *United States v. Brady,* 595 F.2d 359, 361 (6th Cir.) (evidence should be viewed "in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect"), *cert. denied,* 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979). Accordingly, we hold that the burglary paraphernalia was not erroneously admitted against Hatfield.

Hatfield's final contention on appeal challenges the authenticity of all the physical evidence against him by claiming that a court order was not issued to procure the evidence from the state custodian as required by a Kentucky statute, Ky.Rev.Stat. Ann. § 67.594 (Baldwin 1986). This particular matter was raised before the district court for the first time in a post-trial motion which argued that the evidence of noncompliance with the state statute was newly discovered evidence warranting a new trial. Following the district court's denial of this motion brought pursuant to Fed.R. Crim.P. 33, Hatfield filed a notice of appeal contesting the district court's denial of a new trial, and this second appeal was consolidated with Hatfield's first appeal from the judgment of conviction. We find, however, that the second notice of appeal was untimely, thereby depriving us of jurisdiction to hear Hatfield's appeal from the district court's denial of his Rule 33 motion.

 Although Hatfield had been sentenced on March 24, 1986, judgment of conviction against him docketed on March 25, and a timely notice of appeal from this judgment filed on March 24, *see* Fed.R. App.P. 4(b), the district court retained jurisdiction to entertain Hatfield's Rule 33 motion, filed May 2, 1986, for a new trial based on newly discovered evidence. *See United States v. Cronic,* 466 U.S. 648, 667 n. 42, 104 S.Ct. 2039, 2051 n. 42, 80 L.Ed.2d 657 (1984); *United States v. Blanton,* 697 F.2d 146, 148 (6th Cir.1983) (per curiam); *United States v. Lee,* 428 F.2d 917, 923 (6th Cir.1970), *cert. denied,* 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972). Under Rule 33, although the district court may not grant a new trial while an appeal is pending without a remand, *see* Fed.R. Crim.P. 33, the trial court may deny such a motion. *Cronic,* 466 U.S. at 667 n. 42, 104 S.Ct. at 2051 n. 42; *Government of Virgin Islands v. Lima,* 774 F.2d 1245, 1247 n. 1 (3d Cir.1985); *Blanton,* 697 F.2d at 148; *Lee,* 428 F.2d at 923; *Ashe v. United States,* 288 F.2d 725, 733 (6th Cir.1961). Such a denial is an appealable order, and an immediate appeal taken from the denial will be consolidated with a pending appeal taken from the judgment of conviction. *Blanton,* 697 F.2d at 148; *United States v. Ellison,* 557 F.2d 128, 132 (7th Cir.), *cert. denied,* 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977). Nevertheless, by being a distinct appealable order from which a separate appeal must be taken, *see Blanton,* 697 F.2d at 148; *Ellison,* 557 F.2d at 132, an appeal from a Rule 33 motion denial is subject to the requirement that the appeal be taken within ten days from the docketing of the district court's order. *See* Fed.R.App.P. 4(b). Absent an appeal within this time, or an extension from the district court for filing the notice of appeal, *id.,* this court, being without authority to extend the time for filing a notice of appeal, Fed.R.App.P. 26(b), will lack the jurisdiction to hear the appeal. *Cf. Browder v. Director, Department of Corrections of Illinois,* 434 U.S. 257, 264–65, 98 S.Ct. 556, 560–61, 54 L.Ed.2d 521 (1978) (time limit for taking a civil appeal contained in Fed.R. App.P. 4(a) is "mandatory and jurisdictional").

In the instant case, the district court denied Hatfield's new trial on May 19,

1986, and this order was entered on the criminal docket on May 20, 1986. Therefore, by operation of Fed.R.App.P. 4(b), Hatfield had until Friday, May 30, 1986 to file a notice of appeal from this order. The notice of appeal was not filed, however, until Monday, June 2. Since May 30, 1986 was neither a Saturday, Sunday, or legal holiday, *see* Fed.R.App.P. 26(a), and nothing exists in the record to indicate that Hatfield was granted an extension of time by the district court to file the notice of appeal, we hold that Hatfield's appeal in No. 86–5629 was untimely, and that we lack jurisdiction to hear this appeal.[4]

In light of the foregoing, the judgment of conviction against Hatfield is AFFIRMED, and his appeal from the district court's denial of his Rule 33 motion is DISMISSED for want of jurisdiction.

---

**4.** Even if we had addressed Hatfield's final contention, we would have found it to be without merit for at least three reasons. First, Hatfield has failed to establish that the physical evidence in question was not what it was purported to be or that the district court abused its discretion in admitting the evidence. *See Cathey v. Johns-Manville Sales Corp.,* 776 F.2d 1565, 1573 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986); Fed.R.Evid. 901. Next, evidence of noncompliance with the Kentucky statute is simply not newly discovered evidence warranting a new trial. *See United States v. Barlow,* 693 F.2d 954, 966 (6th Cir. 1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983). Finally, the error here, if any, was certainly not "plain error" that affected Hatfield's substantial rights or now requires reversal of his conviction to avoid a miscarriage of justice. *See United States v. Frady,* 456 U.S. 152, 163 & n. 14, 102 S.Ct. 1584, 1592 & n. 14, 71 L.Ed.2d 816 (1982); Fed.R.Crim.P. 52(b).