**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0164n.06
Filed: March 3, 2005

**No. 03-6418**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    **Plaintiff-Appellee,**

v.                                  **ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE**
**ROCKY MORRIS WHITE,**           **WESTERN DISTRICT OF TENNESSEE**

    **Defendant-Appellant.**

_____/


**BEFORE:**    **BOGGS, Chief Judge; CLAY, Circuit Judge; and WALTER, District Judge.**[*]


    **Clay, Circuit Judge.** Defendant, Rocky Morris White ("White"), appeals from the decision

of the United States District Court, Western District of Tennessee, denying his motion pursuant to

Rule 12(b)(3) of the Federal Rules of Criminal Procedure to suppress evidence. White was

subsequently convicted of being a felon in possession of a firearm under 18 U.S.C. § 922 (g).

    Because this case is controlled by our precedent authorizing a search incident to arrest of any

area that is or *was* within the immediate control of a defendant, we **AFFIRM** the district court's

denial of Defendant's motion to suppress evidence.

---

[*]The Honorable Donald E. Walter, United States District Judge for the Western District of
Louisiana, sitting by designation.

## BACKGROUND

Evidence of the following events was presented at hearings held by the district court on Defendant's motion to suppress evidence. At approximately 7:15 - 7:30 p.m. on October 15, 2002, Officer Justin Harris ("Officer Harris") of the Jackson, Tennessee Police Department was on routine patrol in his assignment area in East Jackson when he saw a black Datsun pickup truck, driven by White, traveling northbound on Hays Street with no tail lights. Officer Harris activated his police cruiser's blue lights in order to stop the pickup truck. White stopped, exited the truck, and moved to the front of it, where he lifted the hood. He then took off the camouflage jacket he was wearing and put it in the bed of the pickup truck on the passenger side. There were two other people in the truck at the time it was stopped: White's brother, and a woman later identified only as "Sheilah."

Officer Harris approached White and asked what was going on. White told Officer Harris that his truck had broken down, and Officer Harris asked him for his driver's license. Officer Harris testified that White "just kept ignoring me, acting funny." Officer Harris told White that he pulled him over because the truck had no tail lights, and White responded that he had not been pulled over, but rather stopped because his truck broke down.[1]

White then handed Officer Harris his driver's license, which included an indication that it had been revoked and was not valid for vehicular use. Officer Harris determined that he would cite and arrest White, and called for back up. In response to that call, Sergeant Randy Blankenship ("Officer Blankenship"), also of the Jackson Police Department, arrived. Together, Officers Harris and Blankenship made a final decision to arrest White. While Officer Harris placed White in

---

[1]This dispute is not relevant to any of the issues presented by this case.

handcuffs, Officer Blankenship began a search of the pickup truck. Officer Harris had told Officer Blankenship that White removed his camouflage jacket and put it in the back of the truck. At some point White's brother had also removed his jacket, which was blue and white, and placed it in the back of the pickup truck. Officer Blankenship specifically looked for the camouflage jacket in the bed of the truck, "checked" it, and felt a gun in one of the pockets. He then yelled "gun," and removed the gun from the jacket pocket.

In a statement taken following his arrest, White told police that he was driving down Hays Street with his brother and a woman named Sheilah when the truck stalled. White told police that his brother had given him a gun to hold earlier that day, and that he thought he had returned it to his brother. White explained that this was the same gun subsequently found by police.

On November 18, 2002, a federal grand jury in the Western District of Tennessee returned a one-count indictment charging White with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). White filed a motion to suppress evidence on April 16, 2003. Hearings on the motion to suppress were held on May 22 and June 13, 2003. The motion was denied in an oral ruling by the district court at the conclusion of the second of those hearings. Following a jury trial, White was found guilty of the sole count of the indictment on June 27, 2003. On October 8, 2003, the district court imposed a term of imprisonment of 260 months, to be followed by three years of supervised release. White filed a notice of appeal to this Court on October 14, 2003.

## DISCUSSION

**I.     Standard of Review**

In assessing a district court's denial of a motion to suppress evidence, this Court reviews the factual findings of the district court for clear error, and its conclusions of law *de novo*. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). "When reviewing the denial of a motion to suppress evidence, we must consider the evidence in the light most favorable to the government." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)).

**II.     The district court's denial of Defendant's motion to suppress evidence was proper on the theory that the officer's search was a valid search incident to arrest.**

**a.     Review of the relevant case law**

The Fourth Amendment generally prohibits warrantless searches as *per se* unreasonable. *Katz v. United States*, 389 U.S. 347, 357 (1967). This general rule is subject to certain exceptions, including an exception for searches incident to a lawful arrest. *See Chimel v. California*, 395 U.S. 752, 762 (1969). In *Chimel*, the Supreme Court laid out the scope of and rationale for the search incident to arrest exception to the warrant requirement. The Court explained that just as a police officer may search an arrestee himself for a weapon, in order to promote the safety of the officer, or for evidence, in order to prevent its destruction, so too may the officer search the area within the immediate control of the arrestee, for the same reasons. *Id*. at 763.

Twelve years later, in *New York v. Belton*, 453 U.S. 454, 460 (1981), the Supreme Court determined that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile." This Court subsequently adopted a rule defining the "passenger compartment" of a vehicle as "'all spaces reachable without exiting the vehicle excluding areas that would require

4

dismantling the vehicle." *United States v. Pino*, 855 F.2d 357, 364 (6th Cir. 1988) (citing *United States v. Russell*, 670 F.2d 323 (D.C. Cir. 1982) (quoting LA FAVE, W., SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 7.1, at 132 and n. 9.2)).

The "bright line" rule of *Belton* was adopted by the Court out of a concern that, with "no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile," individuals would not know the scope of their constitutional protections and police officers would not know the scope of their authority. *Belton*, 453 U.S. at 460. The Court endorsed the "passenger compartment" rule based on "the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].'" *Id.* (citing *Chimel*, 395 U.S. at 763) (alteration in original).[2]

---

[2]Justices and commentators alike have frequently pointed out that this generalization may well be incorrect, observing that it is unlikely that an individual who is almost certain to be arrested and handcuffed outside of a vehicle will be able to gain access to its passenger compartment in order to grab a weapon or destroy evidence. *See*, *e.g., Belton*, 453 U.S. at 468 (Brennan, J., dissenting)("Disregarding the principle 'that the scope of a warrantless search must be commensurate with the rationale that excepts the search from the warrant requirement,' the Court for the first time grants police officers authority to conduct a warrantless 'area' search under circumstances where there is no chance that the arrestee 'might gain possession of a weapon or destructible evidence'")(internal citations omitted); *Thornton v. United States*, 541 U.S. 615, ___, 124 S.Ct. 2127, 2134-2135 (2004)(Scalia, J., concurring)(arguing that concerns about officer safety cannot logically motivate the *Belton* rule and concluding that if "*Belton* searches are justifiable, it is not because the arrestee might grab a weapon or evidentiary item from his car"); Myron Moskovitz, *A Rule in Search of a Reason: An Empirical Reexamination of Chimel and Belton*, 2002 WIS. L. REV. 657, 675; David M. Silk*, When Bright Lines Break Down: Limiting New York v. Belton*, 136 U. PA. L. REV. 281, 290-291 (reviewing criticism of *Belton* for "abandon[ing] the theoretical underpinnings of the search incident to arrest doctrine").

Of course, however compelling these arguments may be, we remain bound by the law as

In *Northrop v. Trippett*, this Circuit explained that, when conducting a search incident to arrest, the police may search an item "even if that item is no longer accessible to the defendant at the time of the search. So long as the defendant had the item within his immediate control near the time of his arrest, the item remains subject to a search incident to arrest." 265 F.3d 372, 379 (6th Cir. 2001)(citations omitted).

Most recently, in *Thornton v. United States*, the Supreme Court has held that the rule of *Belton* applies equally whether a police officer arresting an occupant of a vehicle first makes contact with the occupant while he or she is inside or outside of the vehicle. 541 U.S. 615, ___ , 124 S.Ct. 2127, 2129 (2004).

**b.** **The search in this case was a valid search incident to arrest even if not authorized by *Belton*.**

White argues that the "bright line rule" of *Belton* (and now, by extension, of *Thornton*), permitting searches of passenger compartments incident to the arrest of the occupant of a vehicle, is inapplicable in this case because the search at issue was of the bed of the pick-up truck. According to White, the bed of a pick-up truck cannot be considered part of the "passenger compartment" under the definition of "passenger compartment" set forth in *Pino*, i.e., that the passenger compartment includes all space reachable without exiting the vehicle.

We note that there are persuasive arguments to be made on both sides of this issue. On the one hand, the danger that an arrestee (who is almost certainly outside of the passenger compartment at the time of arrest) might be able to reach into the open bed of a pickup truck is as great or greater

defined by the Supreme Court in *Belton*.

than the danger identified by the "generalization" of *Belton*: that an arrestee might be able to reach "inside the relatively narrow compass of the passenger compartment of an automobile." 453 U.S. at 460.

However, *Belton* was motivated by the Court's concern that a clear rule be in place to help both suspects and officers understand the scope of their rights and authority. In that vein, this Court in *Pino* adopted a relatively simple definition of "passenger compartment" as the space reachable without exiting the passenger compartment of the vehicle. Applying that definition, we conclude that the bed of a pick-up truck is not part of the "passenger compartment" of the vehicle, and that the search at issue in this case was therefore not justified by *Belton/Thornton*.

The fact that the search at issue in this case was not authorized under *Belton*, i.e., as a search of a passenger compartment of a vehicle incident to the arrest of the occupant of that vehicle, does not mean that it was not otherwise authorized as a search incident to arrest. This Circuit has held that "[a] search incident to arrest encompasses the search of anything within the area which is, *or was*, within the 'immediate control' of the defendant." *United States v. Hatfield*, 815 F.2d 1068, 1071 (6th Cir. 1987)(emphasis added). More recently we explained that "the right to search an item incident to arrest exists even if that item is no longer accessible to the defendant at the time of the search. So long as the defendant had the item within his immediate control near the time of his arrest, the item remains subject to a search incident to arrest." *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001), citing *Belton*, 453 U.S. at 461-62, n.5.

In light of the holdings of *Hatfield* and *Northrop*, we conclude the district court correctly held that the search in this case of the passenger bed of White's pickup truck and of White's jacket

was a valid search incident to arrest. Evidence presented at the hearing showed that after Officer Harris stopped White, White removed the jacket and placed it in the bed of the pickup truck. Thus, both the jacket and the bed of the pickup truck were within White's immediate control just moments before his arrest. They were therefore properly searched as part of a search incident to arrest.

**c.      Statements taken by Defendant shortly after his arrest were properly admitted by the district court.**

White also argues that the incriminating statements he made to the police regarding the gun shortly after his arrest should be suppressed as "fruit of the poisonous tree" under *Wong v. United States*, 371 U.S. 471 (1963) and *Brown v. Illinois*, 22 U.S. 590 (1975). Because the search that produced the gun was a valid search incident to arrest, any statements that flowed from that search cannot be considered fruit of the poisonous tree and should not have been suppressed on that ground.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the district court's denial of Defendant's motion to suppress evidence.