William **RAINEY**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
Appellee.

No. 2005–SC–000185–DG.

Supreme Court of Kentucky.

May 18, 2006.

Rehearing Denied Aug. 24, 2006.

Keith E. Kamenish, Kevin C. Burke, Louisville, for Appellant.

Gregory D. Stumbo, Attorney General, Teresa Young, Special Assistant Attorney General, Louisville, for Appellee.

Opinion of the Court by Justice SCOTT.

This case comes to us on discretionary review of the Court of Appeals' opinion, reversing the Jefferson Circuit Court's order suppressing the introduction of a handgun found in Appellant William Rainey's vehicle following his arrest. Appellant, William Rainey, had sought to suppress the evidence obtained by the police from his vehicle without a warrant and argued that no valid exception to the search warrant requirement was proven. The Jefferson Circuit Court agreed and suppressed the evidence. The Court of Appeals initially affirmed, and the Commonwealth sought review in this Court. However, at that time, the United States Supreme Court had just issued its opinion in *Thornton v. United States,* 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004). Thus, we vacated and remanded the case back to the Court of Appeals to consider the issue in light of *Thornton, supra.* Accordingly, the Court of Appeals then reversed the trial court's order suppressing the evidence, finding Appellant to have been a "recent occupant" of the vehicle and that the search was lawful as being incident to arrest. We granted Appellant's subsequent request for discretionary

review, and for the reasons set forth below, we affirm the Court of Appeals.

## I. Facts

On January 29, 2002, Louisville Metro Police Officers Steven Glauber and Kenneth Wilkins were on foot patrol in the Beecher Terrace Housing Project in Louisville, Kentucky, when they observed Appellant Rainey's vehicle traveling at a high rate of speed over several speed bumps in the vicinity. From a distance, the officers watched Appellant park his vehicle and then exit, shouting loudly at nearby residents.

By the time the officers initiated contact with Appellant, he had crossed the street and was approximately fifty feet away from his vehicle. Upon approaching Appellant, the officers noticed the smell of alcohol and observed that Appellant was unsteady on his feet and was slurring his speech. Appellant told the officers he had been drinking and had just been thrown out of a local bar. The officers attempted to conduct a field sobriety test, but Appellant refused. He was subsequently arrested and charged with operating a motor vehicle under the influence of intoxicants (DUI) pursuant to KRS 189A.010 and with reckless driving pursuant to KRS 189.290.

After handcuffing Appellant, the officers walked him back to his vehicle and proceeded to unlock the vehicle and search the passenger compartment. A .38 caliber handgun was found under the driver's seat. Appellant was then charged with illegal possession of a handgun by a convicted felon (KRS 527.040) and with being a persistent felony offender in the first degree (KRS 532.080).

Appellant Rainey then filed a motion to suppress the handgun seized from his vehicle, the history of which has been previously recounted.

## II. Analysis

Our analysis in the context of the Fourth Amendment to the United States Constitution must begin with the understanding that "section 10 of the Kentucky Constitution provides no greater protection than does the Federal Fourth Amendment." *LaFollette v. Commonwealth,* 915 S.W.2d 747, 748 (Ky.1996). That being said, the analysis for this particular case involves case law as it has developed in both our state courts and federal courts concerning Fourth Amendment jurisprudence.

> [T]he most basic constitutional rule in this area is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." The exceptions are "jealously and carefully drawn," and there must be "a showing by those who seek exemption ... that the exigencies of the situation made that course imperative.'" "[T]he burden is on those seeking the exemption to show the need for it." ... [T]he values [inherent in the Fourth Amendment] were those of the authors of our fundamental constitutional concepts. In times not altogether unlike our own they won—by legal and constitutional means in England, and by revolution on this continent—a right of personal security against arbitrary intrusions by official power. If times have changed, reducing everyman's scope to do as he pleases in an urban and industrial world, the changes have made the values served by the Fourth Amendment more, not less, important.

*Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (citations omitted). Most relevant

to our review of the issue at bar is the search incident to arrest exception.[1]

■ A search incident to an arrest is an exception to the general rule requiring a warrant prior to searches and seizures pursuant to the Fourth Amendment of the United States Constitution and applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

> This general exception has historically been formulated into two distinct propositions. The first is that a search may be made of the person of the arrestee by virtue of the lawful arrest. The second is that a search may be made of the area within the control of the arrestee.

*United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973).

In analyzing the rationale behind this exception, the United States Supreme Court has stated:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape.... In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. *And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule....* There is ample justification, therefore, for a search of the

arrestee's person *and the area 'within his immediate control'-construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.*

*Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969) (emphasis added). Although *Chimel* involved the search of the defendant's home incident to his arrest, the United States Supreme Court has extended its holding to the warrantless search of an automobile.

■ In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the defendant was pulled over pursuant to a lawful traffic stop and was then arrested for possession of marijuana. After placing Belton (and three others with him) under arrest, the lone officer, with the arrested men standing next to the car, searched the vehicle and found other contraband inside the defendant's jacket pocket, which had been left in the back seat of the vehicle. The pocket had been zipped, and thus the evidence was only discovered after the officer unzipped the pocket. It was only after the search that Belton and the others were placed in the patrol car and transported to the police station. The United States Supreme Court held that the reasoning behind the search incident to arrest exception announced in *Chimel* could be applied to allow the warrantless search of an automobile made contemporaneously to the lawful arrest of its occupant.

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the

---

1. Another exception, though not addressed by the parties and not utilized by the officers in this case, is the warrantless "inventory" search under the inevitable discovery doctrine. Seventh Circuit Judge Posner discussed this exception in *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir.2005), wherein he stated that "[w]arrantless inventory searches of vehicles are lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property and protecting the police from the owner's charging them with having stolen, lost, or damaged his property." (Citation omitted).

probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. *A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.*

Robinson, 414 U.S. at 235, 94 S.Ct. at 476, *quoted in Belton,* 453 U.S. at 461, 101 S.Ct. at 2864 (emphasis added).

Finally, in *Thornton, supra,* the rule of *Belton* was applied to a defendant who was not in the vehicle at the time of his arrest (i.e. he was not an "occupant"). In *Thornton,* the defendant had avoided pulling along side a police cruiser as the two traveled down the road. The officer became suspicious after running the license plate on the car and discovering that the vehicle did not match the vehicle to which the license plate was registered. The officer saw the defendant then pull into a parking lot and exit the vehicle before the officer initiated contact. Upon approaching the defendant, the officer noticed his nervousness and asked to pat down the defendant. The defendant agreed, and the search yielded narcotics. The officer then arrested Thornton and placed him in the back of the patrol car. The search of the vehicle after his arrest revealed a handgun under the driver's seat.

In its decision, the United States Supreme Court once again extended the rationale of *Belton,* holding that once an officer lawfully arrests an automobile's "recent occupant," the officer may search the automobile's passenger compartment as a search incident to arrest. *Thornton,* 541 U.S. at 621–23, 124 S.Ct. at 2131–32. In so ruling, the Supreme Court noted that

while an arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time

of the arrest and search, it certainly does not turn on whether he was inside or outside the car at the moment that the officer first initiated contact with him.

*Id.* at 622, 124 S.Ct. at 2131–32. The Supreme Court declined to address whether *Belton* should be limited to circumstances where the recent occupant was within "reaching distance" of the vehicle or its passenger compartment. However, on the issue of the arrestee's proximity to the vehicle, the Supreme Court acknowledged:

It is unlikely in this case that petitioner could have reached under the driver's seat for his gun once he was outside of his automobile. But the firearm and the passenger compartment in general were no more inaccessible than were the contraband and the passenger compartment in *Belton.* The need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment, justifies the sort of generalization which *Belton* enunciated. Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment.

*Id.* at 622–23, 124 S.Ct. at 2132. Moreover, prior to the United States Supreme Court's holding in *Thornton,* our Court of Appeals aptly held that "in the search incident to arrest context, the distance between the arrestee and the area to be searched is not dispositive of the issue. Whether a search is reasonable as incident to a lawful arrest depends on the particular circumstances involved." *Davis v. Commonwealth,* 120 S.W.3d 185, 194 (Ky. App.2003).

■ Similarly, the Sixth Circuit Court of Appeals has also recognized that the

accessibility of the arrestee to items in his vehicle is not a basis for justifying or denying the search.

> [T]he right to search an item incident to arrest exists even if that item is no longer accessible to the defendant at the time of the search. *So long as the defendant had the item within his immediate control near the time of his arrest, the item remains subject to search incident to an arrest.*

*Northrop v. Trippett,* 265 F.3d 372, 379 (6th Cir.2001) (citing *Belton,* 453 U.S. at 461–63, n. 5, 101 S.Ct. at 2864–65, n. 5) (emphasis added). Under this same line of reasoning, the Sixth Circuit has also held that even though a search may not be authorized under *Belton, i.e.* as a search of a passenger compartment of a vehicle incident to the arrest of the occupant of that vehicle, it may nonetheless be a valid search incident to arrest because such a search "encompasses the search of anything within the area which is, *or was,* within the 'immediate control' of the defendant." *United States v. Hatfield,* 815 F.2d 1068, 1071 (6th Cir.1987), *quoted in United States v. White,* 131 Fed.Appx. 54, 58 (6th Cir.2005) (emphasis in original).

■ Thus, while temporal and spatial proximity to the automobile are certainly factors to be considered in determining the arrestee's status as a "recent occupant" for purposes of *Belton* and *Thornton,* they are not necessarily dispositive. Indeed, the defendant in *Thornton, supra,* was handcuffed and placed in the back of a squad car at the time of the search. Appellant urges this Court to find that his spatial proximity to the vehicle was such that the concerns of *Belton* are not applicable. In essence, Appellant makes the same argument here that the defendant in *Thornton* made, to wit, that the right of an arresting officer to search the passenger compartment of a vehicle terminates when the

arrestee cannot access the vehicle to destroy evidence or access a weapon. We cannot accept such a proposition.

There may be times when officers do not immediately approach a suspect, either for safety concerns for the public in the area or because it would be more effective to conceal their presence. Officers should be free to make these decisions. If officers were required to initiate contact while the suspect was still in the vehicle or after the suspect had just exited the vehicle in order to ensure their ability to search the automobile for discarded contraband or weapons, their safety may be compromised or incriminating evidence may be placed at risk for concealment or destruction. The United States Supreme Court has noted identical concerns. *See Thornton,* 541 U.S. at 621–22, 124 S.Ct. at 2131 (finding "[t]he Fourth Amendment does not require such a gamble").

In any event, we note that the Court in *Thornton* declined to define the term "recent occupant" and stated that whether someone could be considered such for purposes of *Belton* "*may* turn on his temporal or spatial relationship to the car at the time of the arrest and search." *Id.* at 622, 124 S.Ct. at 2131–32 (emphasis added). Thus courts are left with little guidance in determining an arrestee's status as a "recent occupant." However, the Commonwealth notes, and we agree, that when the United States Supreme Court chose the words "temporal *or* spatial," the Court must have meant that whether a person was a "recent occupant" would not be determined only on his spatial relationship to the vehicle at the time of the arrest and search, but could also be based solely on his temporal relationship to the vehicle.

■ Although no evidence was offered in this case concerning Appellant's temporal relationship to his vehicle, and although officer testimony revealed that the officers

did not fear for their safety and conceded that Appellant was so far from his vehicle that it was unlikely he could have accessed it, we are not persuaded that the search was unlawful. The officers here observed Appellant as he drove past them at an excessive rate of speed for the circumstances. The officers observed him exit the vehicle and walk as far as fifty feet from the vehicle before they were able to reach him to initiate contact. While there is no hard and fast definition of what constitutes "recent" both in time and distance,[2] on the facts of this case, Appellant was a "recent occupant" and was sufficiently close to the vehicle, in both time and space, for the concerns of *Belton* and *Thornton* to be applicable. We see no reason to distinguish *Thornton* on the facts of this case. Accordingly, we affirm the Court of Appeals in finding that the suppression of the evidence was erroneous.

GRAVES and WINTERSHEIMER, JJ., concur.

COOPER, J., concurs by separate opinion, with JOHNSTONE, J., joining that concurring opinion.

ROACH, J., also concurs by separate opinion, with LAMBERT, C.J., joining that concurring opinion.

Concurring Opinion by Justice COOPER.

In *Thornton v. United States*, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), the United States Supreme Court essentially held that a search incident to a lawful arrest includes a search of any vehicle in which the arrested person was a "recent occupant." *Id.* at 623–24, 124

S.Ct. at 2132. In my view (and that of five members of the Court that decided *Thornton*), the reasoning supporting this departure from previously settled law with respect to automobile searches is seriously flawed. Nevertheless, *Thornton* is on all fours with the facts of this case. As I stated in my concurrence in *Penman v. Commonwealth*, 194 S.W.3d 237 (Ky. 2006), because (and only because) I consider it important for law enforcement purposes that consistency be maintained between Kentucky and federal law on Fourth Amendment issues, I reluctantly concur in the majority opinion.

JOHNSTONE, J., joins this concurring opinion.

Concurring Opinion by Justice ROACH.

I concur in the result reached by the majority. I write separately, however, to express my concern with the majority's reliance on *LaFollette v. Commonwealth*, 915 S.W.2d 747, 748 (Ky.1996), for the proposition that Section 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment. *LaFollette* does indeed include such a statement. *Id.* at 748. For the reasons expressed herein, however, I would be willing to reconsider *LaFollette* in the appropriate case.

To begin, *LaFollette*'s cited authority does not stand for the claimed proposition. *LaFollette* notes that Section 10 and the Fourth Amendment are similar, thus the United States Supreme Court's interpretation of the Fourth Amendment, though not binding, is certainly informative and persuasive in our interpretation of Section 10.

---

**2.** Justice Stevens, in his dissenting opinion in *Thornton v. United States*, 541 U.S. 615, 636, 124 S.Ct. 2127, 2140, 158 L.Ed.2d 905 (2004), recognized the majority's failure to provide such a definition, wherein he stated that "we are not told how recent is recent, or how close is close, perhaps because in this case 'the record is not clear.'" (Citation omitted).

*LaFollette* follows this rather unremarkable proposition with the following language:

> Stated otherwise, Section 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment. *Estep v. Commonwealth,* Ky., 663 S.W.2d 213 (1983).

915 S.W.2d at 748.

However, *Estep* does not actually state that Section 10 of the Kentucky Constitution provides no greater protection than the Fourth Amendment. In fact, it makes no statement that would even approach that proposition. *Estep* simply adopted the rule of *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), concerning searches of vehicles and their compartments and contents. *Id.* at 215. Rather than stating the broad proposition that Section 10 provides protection identical to federal Fourth Amendment jurisprudence, this Court simply observed that the rule of *Ross* was "in harmony with Section 10. . . ." *Id.* In essence, *Estep* held that in a particular instance, Section 10 provided the same protection as the Fourth Amendment. But nowhere does *Estep* state that Section 10 is only coextensive with the Fourth Amendment. As we had only recently noted when *LaFollette* was rendered, "this Court's decisions have not been entirely consistent as to whether Section 10 and the Fourth Amendment are parallel. . . ." *Crayton v. Commonwealth,* 846 S.W.2d 684, 687 (Ky.1992). *Crayton* then noted three cases, including *Estep,* where the Court had held in specific situations, and again without stating a broad proposition, that the relevant federal rule was in accord with Section 10. *LaFollette* committed the error of deriving an absolute, general rule from a specific situation. Such generalization, absent further explication, does not withstand scrutiny. *Cf. Commonwealth v. Cooper,* 899 S.W.2d 75, 77–78 (Ky.1995) (holding that Ky. Const.

§ 11 provides no more protection than the Fifth Amendment, but doing so with extensive explanation of why the two provisions provide only coextensive protection).

While it is likely that Section 10 of the Kentucky Constitution provides no greater protection than the Fourth Amendment to the United States Constitution, I do not necessarily believe that we are bound to interpret Section 10 in the same manner as the United States Supreme Court has interpreted the Fourth Amendment. Our case law clearly contemplates the possibility that our own constitutional protections could diverge from those in the federal constitution. *See Cooper,* 899 S.W.2d at 77–78 ("From time to time in recent years this Court has interpreted the Constitution of Kentucky in a manner which differs from the interpretation of parallel federal constitutional rights by the Supreme Court of the United States. However, when we have differed from the Supreme Court, it has been because of Kentucky constitutional text, the Debates of the Constitutional Convention, history, tradition, and relevant precedent."). Obviously, the United States Supreme Court's interpretation of the Fourth Amendment represents a minimum amount of protection to which criminal defendants are entitled. And I acknowledge that given the linguistic similarity between the Fourth Amendment and Section 10, we should give great weight to the United States Supreme Court's interpretation of the federal amendment. *See Crayton,* 846 S.W.2d at 687. We have even stated what might amount to a preference for not recognizing different protection under the state constitution. *See Holbrook v. Knopf,* 847 S.W.2d 52, 55 (Ky. 1992) (noting in the context of determining whether our constitutional protections are only coterminous with those of the federal constitution that "[w]e have no intention that such cases should encourage lawsuits espousing novel theories to revise well-established legal practice and principles").

However, if we were to determine that Section 10 of the Kentucky Constitution, as applied to a specific case, contained more protections than the United States Supreme Court had declared is provided by the Fourth Amendment, I believe that we should honor our own constitution. The issue could arise in a situation where the United States Supreme Court has interpreted the Fourth Amendment in such a way as to formulate a legal rule that is inconsistent with the original understanding of Section 10 of the Kentucky Constitution. In such a case, we should decline to defer to the United States Supreme Court's interpretation of the Fourth Amendment when interpreting our own constitutional provision, which is an independent legal protection with a different, albeit related, history and origin. To do otherwise would violate our oath of office by which we are bound to "support the Constitution of the United States *and* the Constitution of this Commonwealth...." Ky. Const. § 228 (emphasis added). Our obligation to engage in independent analysis under our own constitution is even more apparent where the relevant federal precedent is weak.

Thus, on the particular issue before us, I note that there is some question whether *Thornton v. United States,* 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), is a constitutionally sound decision. I agree with Justices Scalia, O'Connor, and Ginsburg that *Thornton* is on shaky ground. *See id.* at 624, 124 S.Ct. at 2133 (O'Connor, J., concurring) (writing "separately to express [her] dissatisfaction with the state of the law in this area" and noting that *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), on which Thornton was premised, already had a "shaky foundation"); *id.* at 628–29, 124 S.Ct. at 2135 (Scalia, J., concurring, joined by Ginsburg, J.) ("[I]n our search for clarity, we have now abandoned our constitutional moorings and floated to a place where the law approves of purely exploratory searches of vehicles during which officers with no definite objective or reason for the search are allowed to rummage around in a car to see what they might find. I agree entirely with that assessment." (internal citation and quotation marks omitted)). Moreover, *Thornton* is not the strongest precedent to begin with, as only four justices—a minority of the Court—joined all of the reasoning of the opinion of the Court. Though we are bound by the Court's plurality opinion insofar as it creates a minimum amount of protection, to blindly attach its rule to our own Section 10, given the disparate approaches urged by the members of the Court, makes little sense. If Section 10 charts a clearer course, we should follow it.

However, with all this said I concur in the result of the majority opinion. The parties have only argued within the parameters of *Thornton*'s plurality rule, in effect, agreeing that Section 10 provides only as much protection as the Fourth Amendment. While I welcome the day that we might revisit *LaFollette,* I simply cannot do so without full briefing and argument of such an important issue. *See Thornton,* 541 U.S. at 625, 124 S.Ct. at 2133 (O'Connor, J., concurring) ("I am reluctant to adopt it in the context of a case in which neither the Government nor the petitioner has had a chance to speak to its merit."). This case simply does not squarely present the issue of whether Section 10 requires a rule as to recent occupants of automobiles different from that which the United State Supreme Court has applied under the Fourth Amendment. For that reason, I concur.

LAMBERT, C.J., joins this concurring opinion.